UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SEAN A. BRUCE, *et al.*, | ) | CASE NO.  5:21-cv-1206 |
| | ) | |
| Plaintiffs, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| ISLAMIC REPUBLIC OF IRAN, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is plaintiffs' emergency motion (Doc. No. 29 (Emergency Motion)) to amend the service of process date (*see* Service by Clerk [non-document], filed 6/5/2023) for the Court's May 22, 2023 Order (Doc. No. 25 (Order for Diplomatic Service)) permitting service of the Default Judgment Order (Doc. No. 22 (Default Judgment Order)) and the Judgment Entry (Doc. No. 23 (Judgment Entry)) via diplomatic service. As set forth herein, the motion is **DENIED.**

I.     BACKGROUND

On June 17, 2021, this action was brought against the Islamic Republic of Iran by four plaintiffs who sought to recover damages under 28 U.S.C. § 1605A for injuries they sustained as U.S. Marines during the October 23, 1983 suicide bombing attack on the U.S. Marine Headquarters in Beirut, Lebanon. (Doc. No. 1 (Complaint) ¶¶ 1–9, 22–41.)[1] After the initial request for diplomatic service of process, the Department of State ("Department") lost the relevant papers,

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

which tracking methods showed had been delivered to the Department on August 3, 2021. (Doc. No. 10 (First Status Report), at 2.) Plaintiffs' counsel did not discover the Department's loss until March 30, 2022, through no fault of their own. (*Id.* at 3.)

Service of the complaint was perfected on July 11, 2022. (Doc. No. 13 (Notice of Delivery).) Iran failed to answer. (Doc. No. 16 (Default Entry).) On March 23, 2023, plaintiffs filed a motion for default judgment (Doc. No. 20 (Motion for Default Judgment), which the Court granted on May 19, 2023, accompanied by a separate judgment entry. (Doc. Nos. 22, 23.) The Court also ordered diplomatic service of the default judgment order and judgment entry. (Doc. No. 25.)

In part because of the eight-month delay caused by the Department, plaintiffs became ineligible for a type of relief established by a recent amendment to the United States Victims of State Sponsored Terrorism Fund ("USVSSTF").[2] The amendment provides that victims of the Beirut bombing who possessed a final court judgment as of December 29, 2022, may be eligible for lumpsum catch-up payments ("LSCUP") that "would result in the percentage of the claims of such victims received from the Fund being equal to the percentage of the claims of non-9/11 victims of state sponsored terrorism received from the Fund, as of such date of enactment." 34 U.S.C. § 20144(d)(4)(D)(i).

To preserve their eligibility for LSCUP, plaintiffs filed a motion pursuant to Fed. R. Civ. P. 59(e) for the Court to amend its previous default judgment order and judgment entry to be considered effective *nunc pro tunc* as of December 28, 2022. (Doc. No. 26, at 2.) The Court granted

---

[2] The Court notes that between October 14, 2022, and March 15, 2023, plaintiffs filed three status reports (Doc. Nos. 17, 18, 19) explaining that their motion for default judgment was still in progress. The default motion was filed on March 23, 2023 (Doc. No. 20), five months after the Clerk's Office entered default against defendant (Doc. No. 16).

2

plaintiffs' motion to "cure any injustice that is likely to result from the inactivity of the Department of State with respect to the original request for diplomatic service of process." (Doc. No. 27, at 5.) The Court's order provided that:

> The effective date of both the Default Judgment Order (Doc. No. 22) and the Judgment Entry (Doc. No. 23) shall be deemed to be December 28, 2022. Further, the Clerk is directed to make an explicit notation on the docket for each of these two entries linking each one to the instant order and indicating that the effective date for each is December 28, 2022.
>
> Finally, to the extent it may be necessary, plaintiffs are granted leave to proceed directly with diplomatic service of the instant order using the procedure set forth in the previously issued order for diplomatic service.

(*Id.* at 6 (citations omitted).) Accordingly, the Clerk's Office made a docket entry on June 5, 2023 (*see* Service by Clerk [non-document], filed 6/5/2023), noting the date that service of the default judgment order and judgment entry was sent to the U.S. Department of State for Islamic Republic of Iran via certified mail.

Despite the relief previously granted by the Court (Doc. No. 27), the Government Accountability Office ("GAO") recently determined that plaintiffs are ineligible for LSCUP. (Doc. No. 29-1 (Declaration of David A. Welling), at 6–7.) Although the effective date of the Default Judgment was *nunc pro tunc* dated Dec. 28, 2022, and therefore timely, the GAO reasoned that the June 5, 2023 date of service of the Default Judgment, entered by the Clerk's Office, was untimely. (*Ibid.*); (*see* Service by Clerk [non-document], filed 6/5/2023.) Plaintiffs now ask the Court to change the Clerk's Office's June 5, 2023 administrative entry to December 28, 2022, "so the service date is consistent with this Court's other Orders and intent." (Doc. No. 29, at 4.)

**II.     DISCUSSION**

To be eligible for LSCUP, victims must have submitted applications to the USVSSTF

3

within the statutory application time frame and must have been awarded a qualifying final judgment before December 29, 2022. 34 U.S.C. § 20144(c)(3)(a). In determining whether plaintiffs were awarded a qualifying final judgment before December 29, 2022, the GAO applied the statutory definition of that term: "The term 'final judgment' . . . shall not be considered a final judgment until such time as *service of process* has been completed pursuant to [28 U.S.C. § 1608(e)]." 34 U.S.C. § 20144(j)(4) (emphasis added). The GAO determined plaintiffs were ineligible for LSCUP because the docket entry provided by the Clerk's Office (*see* Service by Clerk [non-document], filed 6/5/2023) reveals that service of process was executed after the statutory deadline.

Though plaintiffs' previous emergency motion for relief (Doc. No. 26) was granted pursuant to Fed. R. Civ. P. 59(e), plaintiffs now move for emergency relief pursuant to the Court's "broad equity and legal powers" without explaining what those powers entail. (Doc. No. 29, at 4.) The Supreme Court has recognized the equitable authority of courts to grant relief *nunc pro tunc* in certain circumstances "to 'reflect the reality' of what has already occurred[.]" *Roman Cath. Archdiocese of San Juan v. Acevedo Feliciano*, 589 U.S. 57, 65, 140 S. Ct. 696, 206 L. Ed. 2d 1 (2020) (quoting *Missouri v. Jenkins*, 495 U.S. 33, 49, 110 S. Ct. 1651, 109 L. Ed.2d 31 (1990).) "The purpose of [this type of] order 'is to correct mistakes or omissions in the record so that the record properly reflects the events that *actually took place*.'" *Levy v. Green*, No. 8:18-cv-1291, 2024 WL 3090367, at *6 (D. Md. June 21, 2024) (quoting *Glynne v. Wilmed Healthcare*, 699 F.3d 380, 383–84 (4th Cir. 2012)). "The 'narrow confines of the doctrine are widely recognized,' and *nunc pro tunc* orders cannot be used to 'retroactively record an event that never occurred.'" *Ibid.* (quoting *Glynne*, 699 F.3d at 384). Federal courts do not have authority "to grant retroactive relief

4

by *nunc pro tunc* orders which purport to create facts or rewrite history to support the retroactive relief granted." *In re Grinding Specialists*, *LLC*, 625 B.R. 6, 14 (Bankr. D.S.C. 2021) (quoting *In re Miller*, 620 B.R. 637, 641 (Bankr. E.D. Cal. 2020)). Plaintiffs have provided no caselaw to support their claim that the district court's equitable powers extend to amending the Clerk's Office's factual recordings. In asking the Court to alter the service of process date, plaintiffs seek to "rewrite history[.]" *In re Grinding Specialists*, *LLC*, 625 B.R. at 14.

Though the Court sought to "cure [] injustice" (Doc. No. 27, at 5) in granting plaintiffs' previous emergency motion to amend the effective dates of the Court's own orders (Doc. Nos. 22, 23), the present motion falls far outside the authority granted by Fed. R. Civ. P. 59(e).[3] The Court concludes plaintiffs' request is beyond what its "broad equity and legal powers" permit. (Doc. No. 29, at 4.)

### III. CONCLUSION

For the reasons set forth herein, plaintiffs' motion (Doc. No. 29) is denied.

**IT IS SO ORDERED**.

Dated: November 18, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[3] Fed. R. Civ. P. 59(e) provides that a motion to alter or amend a judgment must be filed "no later than 28 days after the entry of the judgment." The present motion, however, was filed almost sixth months after the default judgment order was entered, and Fed. R. Civ. P. 6(b)(2) explicitly prohibits the Court from extending Fed. R. Civ. P. 59(e)'s 28-day period. (Doc. No. 29.) Further, while Fed. R. Civ. P. 59(e) specifically concerns the Court's ability to alter or amend court-issued judgments, the present motion requests an alteration of an administrative docket entry issued by the clerk's office. The Court notes that in the Sixth Circuit, an untimely Fed. R. Civ. P. 59(e) motion may be treated as a Fed. R. Civ. P. 60(b) motion for relief from a judgment or order, which has a one-year filing deadline. *Donaldson v. Cent. Michigan Univ.*, 109 F. App'x 15, 17 (6th Cir. 2004) (citing *Feathers v. Chevron U.S.A., Inc.,* 141 F.3d 264, 268 (6th Cir. 1998).) This does not help plaintiffs, however, who do not seek relief from a judgment or order, but rather, seek to modify the date of an administrative docket entry.